# FIRST NATIONAL BANK OF LAWRENCE COUNTY
## v. HIGGINBOTHAM FUNERAL SERVICE, INC.

CA 90-487                                    818 S.W.2d 583

Court of Appeals of Arkansas
En Banc
Opinion delivered November 6, 1991
[Rehearing denied December 4, 1991.*]

---

*Cracraft, C.J., and Cooper, J., would grant rehearing.

*Ponder & Jarboe,* by: *Dick Ponder,* for appellant.

*Davidson, Horne & Hollingsworth* by: *Allan W. Horne,* for appellee.

JUDITH ROGERS, Judge. On May 26, 1989, appellant, First National Bank of Lawrence County, filed suit in the Lawrence County Circuit Court against appellee, Higginbotham Funeral Service, Inc., and William Carter Higginbotham, individually, to collect on a note executed in 1987 that was past due. On August 28, 1989, a consent judgment was signed by the trial judge and entered of record as presented by appellant's attorney, and David Mullen, who purportedly represented as counsel both Carter Higginbotham and the appellee-corporation.

On September 9, 1989, appellee filed a motion to set aside the consent judgment pursuant to Ark. R. Civ. P. 60 on grounds of preventing a miscarriage of justice and fraud in the procurement of the judgment, based on the claim that the employment of David Mullen to represent the corporation was unauthorized and that Mullen was without authority to consent to judgment on its behalf. As a meritorious defense, appellee asserted that the note upon which the appellant's claim was based was executed without its authority, and was thus null and void. In its response to the motion, appellant pled laches, waiver, estoppel and ratification. The hearing of this matter was not held until September of 1990.

Based on a finding of fraudulent conduct on the part of appellant in obtaining the judgment, the trial court set aside the consent judgment as to appellee and granted a new trial, but the court left intact the judgment against Carter Higginbotham, who took no part in the hearing.

Appellant appeals from the trial court's order granting appellee's motion to set aside the consent judgment. Appellant raises two issues for reversal, arguing that appellee was estopped from setting the judgment aside; and that appellee ratified the action of Carter Higginbotham in hiring David Mullen and that the trial court erred in finding that there was clear evidence of fraud. We affirm on all issues.

It will be necessary to recite in some detail the factual background of this case in order to fully understand the questions raised on appeal. The record discloses that appellee, Higginbotham Funeral Services, Inc., is a close corporation which was formed in 1968 by W.C. Higginbotham and his family, and has branches located in Walnut Ridge and Hardy, Arkansas. In 1981, W.C. and his wife, Mary Jo, were divorced, and in the divorce settlement, W.C. was given control over the Walnut Ridge branch, while Mary Jo was given control of the Hardy operation. W.C. died sometime in 1987.

Roughly six weeks before the appellant filed the instant lawsuit in circuit court, David Mullen, at the behest of Carter Higginbotham [hereinafter "Carter"], who is W.C. and Mary Jo's son, filed an action in the Lawrence County Chancery Court for declaratory judgment on behalf of the corporation against Mary Jo. In the complaint for declaratory judgment, it was alleged that the board of directors had unanimously agreed to sell all real and personal property comprising the Hardy assets of the corporation; that Mary Jo had by letter objected to this action, considering unlawful any decision by the board, as she deemed herself the only lawful director of the corporation; and that the prospective purchaser was unwilling to go forward with the purchase until the matter was settled. Therefore, it was asked of the chancellor to declare that the board was lawfully constituted, and that the decision of the board to sell the assets of the Hardy branch was valid.

Thereafter, on June 1, 1989, Mary Jo filed a third-party

complaint in the declaratory judgment action against Carter, both individually and as executor of W.C.'s estate. The third-party complaint contained the allegations that certain shares of the corporation had been transferred to Carter and Hazel Best in violation of the Articles of Incorporation; that Carter had taken control of the Walnut Ridge operation; that Carter and Hazel Best had purported to act as elected officers and directors of the corporation and had purported to take action in the name of the corporation, such as by obtaining loans and expending corporate funds and assets; that such acts were in violation of the Articles of Incorporation and were without authority, or in excess of authority, and were null and void; and, that Carter had undertaken to employ David Mullen as the attorney for the corporation, an undertaking for which he was without authority.

On June 20, 1989, David Mullen filed an answer to appellant's complaint in circuit court on behalf of appellee and Carter, admitting the indebtedness owed to appellant.

Trial of the declaratory judgment and third-party complaint was had on August 4, 1989, and on August 17th, the chancellor ruled that Mary Joe was the only duly elected member of the board of directors, and that Carter and Hazel Best were not validly elected officers or directors of the corporation. The chancellor enjoined the two from conducting any further activities on behalf of the corporation.

The consent judgment at issue here was entered on August 28, 1989, which was after the chancellor's ruling in the other lawsuit; however, it is undisputed that neither appellant, nor Mullen knew of that decision when the consent judgment was entered, on the day the case was set for trial. By virtue of this settlement, appellant was awarded judgment jointly and severally against appellee and Carter in the amount of $108,087.62 with interest accruing at the rate of $30.33 per day, together with costs and an attorney's fee of $3,000.

Since the issue of fraud was the primary subject of our discussion in conference, we will address that issue first. Rule 60 (c)(4) of the Arkansas Rules of Civil Procedure authorizes the trial court to modify or vacate an order, at any time, for fraud practiced by the successful party in obtaining the judgment. The Rule thus permits vacation or modification of an order after

ninety days only in cases of fraud practiced upon the court in obtaining the judgment. *See Smart* v. *Biggs*, 26 Ark. App. 141, 760 S.W.2d 882 (1988). The fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. *Alexander* v. *Alexander*, 217 Ark. 230, 229 S.W.2d 234 (1950). It is not sufficient to show that the court reached its conclusion upon false or incompetent evidence, or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, an issue in the proceeding before the court which resulted in the decree assailed. *Id*. Even though the fraud that vitiates a judgment may be constructive rather than actual, constructive fraud is nonetheless a species of wrongdoing. *Ark. State Hwy. Comm'n.* v. *Clemmons*, 244 Ark. 1124, 428 S.W.2d 280 (1968). Constructive fraud is defined as a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others. Neither actual dishonesty nor intent to deceive is an essential element. *See RLI Ins. Co.* v. *Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991). The party seeking to set aside the judgment has the burden of showing that the judgment was obtained by fraud, *see Karam* v. *Halk*, 260 Ark. 36, 537 S.W.2d 797 (1976), and the charge of fraud must be sustained by clear, strong, and satisfactory proof. *Ark. State Hwy. Comm'n.* v. *Clemmons, supra*.

From the testimony and exhibits introduced at the hearing, it was revealed that appellant, through its representatives, had knowledge of the controversy surrounding the control of the corporation. Specifically, it was shown that appellant was aware of the declaratory judgment action as early as May 17, 1989, which was before its own complaint was filed, and it was shown that appellant had received a copy of Mary Jo's third-party complaint within days of its filing, in which the question of both Carter and Mullen's authority to act was specifically challenged. There was also evidence that appellant itself was concerned about the problems within the corporation, as on May 19, 1989, the appellant advised Carter that no further loans would be extended due to the uncertainty as to who were the proper directors of the

corporation.

The trial court made its ruling from the bench, stating:

> In that motion to set aside the judgment, we have to determine if in fact there was fraud practiced by the successful party, which is the bank, not necessarily Carter Higginbotham, but the bank.
>
> . . .
>
> In looking at the issues and reading the rule about five, six, seven times and listening to your argument and reading your briefs, the Court is going to rule that the motion to set aside the judgment is going to be granted in that there is some evidence of fraud on the part of the bank. It does not mean fraud like we think of fraud, it means that there was a judgment submitted to me through David Mullen of which the bank or there's evidence that the bank had some knowledge that this was not properly done.

As indicated by these comments, the trial judge found that appellant had practiced a constructive fraud on the court in obtaining the judgment. The appellant possessed the knowledge of the other proceedings and the challenge to Carter's authority, from which Mullen's representation was derived. Nevertheless, a consent judgment was entered into with these parties and presented to the court for signature without revealing to the court that there were questions over control of the corporation. We believe that under these circumstances the trial court had the right to set aside the consent judgment as to appellee, and we affirm the finding of the trial court on the issue of fraud.

In all due respect to the dissenting judges, it was not incumbent on the trial court to set out with specificity its finding of fraud, particularly in the absence of a request to do so by the parties. *See Miles* v. *Southern,* 297 Ark. 274, 763 S.W.2d 656 (1987) (supplemental opinion denying rehearing). Even so, we cannot accept the view that no such finding was made by the trial court in this instance. First, it is clear from the discussions between court and counsel before the hearing began, that the trial court was well-aware, and the court expressly stated, that the burden of proof on the issue of fraud was by clear and convincing evidence in order to set aside the judgment. Secondly, in making

this finding, the trial judge accurately described the type of fraud evidenced in the record, that of constructive fraud, which should dispel any doubt that such a finding was made. To seize upon the words "some" and "evidence" of fraud to reach a conclusion that no finding of fraud was made is merely placing form over substance. We are unwilling to say that the trial court ignored its earlier pronouncement with respect to the burden of proof, and this, coupled with the trial court's descriptive remarks, constitutes a sufficient finding for purposes of review.

■ Furthermore, the appellant does not argue that the trial court's finding of fraud was in any way deficient, and more importantly, appellant does not seriously argue that the trial court's finding of fraud was not supported by the evidence. It appears then that the dissent has created an issue for reversal out of whole cloth, an argument which is neither advanced nor addressed by the parties on appeal, or at the hearing. Since neither of the parties contend otherwise, the question on appeal is whether or not the trial court's finding was clearly against the preponderance of the evidence. *See e.g. Riggs* v. *Sheridan*, 22 Ark. App. 175, 737 S.W.2d 175 (1987). There was ample evidence presented that the consent judgment was procured by constructive fraud, such that we cannot say that the trial court's finding was clearly erroneous.

■ As stated above, appellant in its argument before this court does not seriously contest the findings of fraud made by the trial court. Instead, appellant asserts that, notwithstanding a finding of fraud, appellee is precluded from contesting the entry of the consent judgment based on principles of ratification and estoppel. It is the appellant's contention that the appellee ratified the actions of Carter and Mullen, and is estopped from attacking the judgment because it was shown that Mary Jo had notice of this lawsuit as of July 6, 1989. We do not find that these principles apply to the facts in this proceeding involving the narrow issue of vacating the judgment. In the first place, appellant was at all relevant times aware of the dispute over the control of the corporation. Absent in its argument is any claim of detrimental reliance, which might prevent appellee from contesting the judgment. It simply cannot be said that appellant was misled. In addition, we believe that the filing of the motion to set aside the judgment within nine days after its entry negates a finding of

ratification. We do note that appellant has expanded his arguments on these issues to include matters that will likely arise at trial. Therefore, we express no opinion on these questions at this time. For these reasons, we find no merit in the arguments advanced based on the doctrines of ratification and estoppel.

Affirmed.

CRACRAFT, C.J., and COOPER, J., dissent.

GEORGE K. CRACRAFT, Chief Judge, dissenting. I dissent. My departure from the majority is brought about by a firm conviction that its conclusions are based on an entirely false premise, i.e., that the trial court vacated the judgment "[b]ased on a finding of fraudulent conduct on the part of appellant." There was simply no such finding.

On appeal, appellant argues, *inter alia*, that the court erred in finding clear evidence of fraud, and appellee contends that it offered sufficient proof. The evidence on the issue of fraud was conflicting. Although there was evidence that the bank did have some knowledge of the declaratory judgment action and challenge to the authority of Carter Higginbotham and David Mullen to control the corporation, whether that evidence was sufficient to justify a finding of fraud was an issue for the trial court to determine from the evidence. The majority perceives such a finding in the following statement of the court:

> In looking at the issues and reading the rule about five, six, seven times and listening to your arguments and reading your briefs, the Court is going to rule that the motion to set aside the judgment is going to be granted in that *there is some evidence of fraud* on the part of the bank. It does not mean fraud like we think of fraud, it means that there was a judgment submitted to me through David Mullen of which the bank *or there's evidence that the bank had some knowledge* that this was not properly done. [Emphasis added.]

The majority opinion is based on the premise that "[a]s indicated by these comments, the trial judge found that appellant had practiced a constructive fraud on the court. . . ." To me, the trial court's remark has an entirely different meaning. It clearly indicates that the trial court had determined to set the judgment

aside, not on finding fraud, but on finding *some evidence* of it. If any doubt remained, the following colloquy should have dispelled it:

> [APPELLANT'S COUNSEL]: . . . I don't think that you can make a finding of whether there is fraud without considering whether or not—
>
> THE COURT: Oh, I'm making a ruling that there is *evidence* of fraud. [Emphasis added.]

Rule 60 (c)(4) of the Arkansas Rules of Civil Procedure contemplates that a final judgment will not be set aside except on a finding of fraud practiced on the court in procurement of the judgment. It does not authorize the setting aside of solemn judgments merely because a party presents "evidence of fraud" or "some evidence" of it. The rule contemplates that the trial judge will weigh the evidence of fraud on the court against that of fair and open dealing, determine from the whole record whether such fraud has been proved, and enter his order accordingly. Fraud is never presumed; it must be proved by clear, strong, and satisfactory evidence. *See Arkansas State Highway Commission v. Clemmons*, 244 Ark. 1124, 428 S.W.2d 280 (1968). Here, the trial judge made no such finding, and the order appealed from sets the judgment aside without reciting any grounds.

Contrary to what the majority seems to think, I agree that a trial judge is not required to set out specific findings of fact in the absence of a request that he do so. In the ordinary case, we presume that a court acted properly and made the findings of fact necessary to support its judgment. However, this presumption will be indulged only *in the absence of a showing to the contrary. See Kindrick v. Capps*, 196 Ark. 1169, 121 S.W.2d 515 (1938); *Hollingsworth v. McAndrews*, 79 Ark. 185, 95 S.W. 485 (1906). The recognized limitations on the use of this presumption are set out in 5 C.J.S. *Appeal and Error* § 1564(8) (1958):

> A finding will not be implied where it would be clearly wrong to do so, as where it would be in contradiction of the record, or where the likelihood exists that to do so would thwart the intention of the trial court, or where the counsel have agreed that there shall be no findings, or *where the*

*court has expressly refused to find the particular fact.* Further, the doctrine of implied findings will not be applied as to matters on *which the court has made a direct finding, or a finding which precludes the inference,* or where the fact is not fairly inferable from the facts found; and it has been said that the appellate court will not search the record to supply a finding which the trial court should have made in the first instance.

It will not be presumed that the trial court found a particular fact where to do so would result in a reversal of the judgment, or where the record shows that the judgment was expressly based on the findings made, *where the finding presumed would be inconsistent with the findings made,* where a special statute applicable to the case required certain facts to be set forth in the judgment, where the case is one in which no findings are required, or where the findings made are not within the pleadings. It is not presumed that the judge found facts sufficient to support the judgment entered where it is apparent that he acted under an erroneous conception of the applicable law. [Emphasis added. Footnotes omitted.]

To me, one cannot escape the conclusion that there was in this case such a "showing to the contrary" as to completely negate the applicability of any presumption that the trial court found fraud. To presume that the trial court found that fraud on the court had been proved (as distinguished from having found that there was "some evidence" of it) would be in direct contradiction to, and wholly inconsistent with, the finding actually announced and concisely restated at the close of the hearing.

The majority also accuses me of "creat[ing] an issue for reversal out of whole cloth, an argument which is neither advanced nor addressed by the parties on appeal, or at the hearing." It is true that appellant does not in its brief attack the trial court's "finding" of fraud as being "deficient." However, as the majority concedes, appellant does argue that the evidence is insufficient to support the trial court's "finding" of fraud.[1] That

---

[1] The majority opinion twice states that appellant does not "seriously" contest the sufficiency of the evidence as to fraud. Nevertheless, after stating the procedural history of

argument alone *requires* us to consider the issue raised in this dissent. As there was no finding of fraud on the court in the procurement of the judgment, and as it would be improper on the facts of this case for us to presume that such a finding was made, there is no finding for us to review. *See Charleston School District No. 9* v. *Sebastian County Board of Education*, 300 Ark. 242, 778 S.W.2d 614 (1989); *Des Arc Bayou Watershed Improvement District* v. *Finch*, 271 Ark. 603, 609 S.W.2d 70 (1980). As there is no finding for us to review, I am at a loss as to how we can decide the sufficiency issue presented to us. *See Des Arc Bayou Watershed Improvement District* v. *Finch, supra.* As we do not review circuit court cases *de novo* on the record, we cannot make the missing finding ourselves on appeal; our function in this regard is simply to review the findings of the factfinder. *See Charleston School District No. 9* v. *Sebastian County Board of Education, supra.*

I am of the firm and abiding conviction that the majority opinion is dead wrong, and that the order appealed from should be reversed and the case remanded for the circuit court to make a finding, based on the record as it already exists, on the factual issue that was presented to it. I express no opinion as to the sufficiency of the evidence in this record to support a finding of fraud, if and when one is ever made.

COOPER, J., joins in this dissent.

---

the case, it takes the majoirty six typewritten pages to discuss that evidence and dispose of that very issue. Only one paragraph is devoted to the issues of ratification and estoppel.